PIERCE, Judge.
This is an appeal by appellants James Pennington and Wilfred Pennington, sons of the decedent, James K. Pennington, from an order entered by the County Judge of Pinellas County denying their petition to revoke a previously entered order directing distribution of the decedent’s estate and overruling their objections to the report and distribution.
On October 25, 1962, James K. Pennington died intestate at Clearwater, Florida, and on November 5, 1962, the local funeral director, as a creditor of the estate, filed petition in the County Judge’s Court, setting forth that the only known surviving relative of decedent was a sister, one A. Pennington of Surrey, England. Thereupon Lloyd M. Phillips, attorney for the creditor, was appointed administrator of the estate and immediately qualified as such. On August 4, 1964, after the estate had been fully administered except for distribution to the heirs and approval of accounts, order was entered by the County Judge approving the accounts of the administrator and directing distribution of the estate to a brother and a sister of the decedent and the descendants of decedent’s deceased brother and sisters, all living in England. Distribution was accordingly made on September 8, 1964, in compliance with the order.
On October 21, 1966, over two years later and prior to administrator Phillips’ final discharge, James Pennington and Wilfred Pennington filed petition in the estate matter setting forth that they were the natural sons of the decedent and that, to the best of their knowledge, they were the only children and the sole heirs at law of decedent. The petition objected to the administrator’s report as administrator, objected to the County Judge’s order directing distribution, asked that petitioners, decedent’s sons, be declared the sole heirs of decedent, that the brother and sisters, etc., to whom distribution had been made, be declared not to be the heirs of decedent, that the order approving the administrator’s accounts and directing distribution be revoked, and that distribution of the estate thereupon be made “to your petitioners equally, as the sole heirs at law of James K. Pennington, deceased”. It was further prayed that should the administrator “be unable or unwilling to so distribute, that he be found to be personally liable for such distribution” to petitioners, because the administrator had “incorrectly, unlawfully, arbitrarily and. negligently selected and distributed estate assets to distributees other than the lawful heirs of James K. Pennington, deceased”.
On October 25, 1966, administrator Phillips answered the petition, setting forth that he had made distribution of the estate in accordance with the County Judge’s previous order so directing, denying that he had previously known of the existence of the sons, and averring that he had exercised “due diligence in determining the heirs”.
After hearing, the County Judge entered order finding that the sons James and Wilfred were in fact the only heirs at law and next of kin of the decedent and as such *883 were entitled to share equally in the decedent’s estate, and that the administrator was authorized and directed to recover sums theretofore distributed, and to re-distribute same in equal shares of the two sons.
Thereafter, depositions were taken, followed by a trial before the Court. On January 3, 1969, the County Judge entered order denying the sons’ petition to revoke the order of distribution, finding that “the administrator, Lloyd M. Phillips, exercised the diligence that an ordinarily prudent man would exercise under like circumstances. Although hindsight would tend to show that the administrator acted incautiously, if his acts, as proven, are examined in sequence, it appears that he performed naturally and sufficiently prudently as to not constitute negligence”. From this order, the sons, James and Wilfred, have appealed to this Court. The facts, while unfortunate, produced no case of chargeable negligence against administrator Phillips, who had been an honorable legal practitioner in Clearwater for over a quarter century. We affirm.
Decedent had been residing alone in a small efficiency apartment in Clearwater. His landlord was unable to furnish the name of any relative or even close friend of decedent except that he “thought there was a sister in England”. A search of decedent’s safety deposit box and the apartment where he had been living revealed certain assets such as insurance policies, but no will. Certain letters found among decedent’s personal effects, together with information from the landlord, indicated existence of an elderly 77 year old sister by the name of Amelia Pennington, residing in England. On November 29, 1962, the administrator wrote the sister asking her to advise him fully of the Pennington “family situation”. The sister wrote back under date of December 9, 1962, setting out the names of certain surviving brother and sisters, together with the children of a deceased brother and two deceased sisters of the decedent, James K. Pennington. The sister’s letter made no mention of any previous marriage of decedent and contained no reference to his sons James and Wilfred. Several weeks later the administrator got a letter from a Michigan lawyer by the name of Feester, wherein mention was made as to the sister in England but making no reference to existence of any children. The administrator testified that—
“I made a direct inquiry to the only living relative requesting the family situation. She gave it to me and I relied upon it. We went through boxes of papers and we found nothing to indicate any names at all of family with the exception of this Miss A. Pennington * * * it did turn out she was a sister. I went ahead on that basis.”
Administration of the estate proceeded in a routine and orderly manner. In July of 1966, almost two years after distribution had been made to the then-known heirs and four years after decedent’s death, one of the sons, James, showed up in the administrator’s office in Clearwater and identified himself. The administrator recalled the meeting as follows:
“Mr. Pennington came to my office. My recollection is that I first learned that the situation concerning him being a son to Mr. James K. Pennington when he was actually in my office. He may have called before he came. He came to my office after 9:30 on the morning of July the 28th, 1966, and it was at that time that I first learned of the fact that he was a son. I did not question the fact that he was a son. He seemed to know that he was a son. I opened the file, showed him what had happened concerning distribution, talked with him about this. In the course of our conversation he told me that he and his brother had known of the death of his father and there was no mention as to any specific time that this knowledge came to his attention. I asked him why he had not contacted me about this or made some contact relative to the estate and he told *884 me that it was because of his stubborn English pride.”
James testified and gave rather inconclusive reasons why he and his brother had not been more diligent in pursuing the matter of their father’s death. Further evidence was adduced which it is not necessary to narrate here. Suffice to say that it all added up to a normal and natural course of conduct on the administrator’s part in his efforts to ascertain the rightful heirs of decedent. The County Judge, as the trier of the facts, made necessarily implied findings which are supported by the record lodged here. In our appellate posture we cannot substitute our judgment for that of the trial Judge, where that judgment finds competent and substantial support in the record. The order appealed from is therefore—
Affirmed.
LILES, A. C. J., and MANN, J., concur.